UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 20-cv-61690-SINGHAL

DEBRON WALLEN,
SANJAY SHAKES, Individually and
On Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

SVENSK MANAGEMENT, INC. &
RICHARD FERNBACH,

    Defendants.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION
AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS**

**I.    INTRODUCTION**

Relying on vague allegations that certain pool service technicians were not properly paid for overtime hours, Plaintiffs Debron Wallen ("Plaintiff Wallen") and Sanjay Shakes ("Plaintiff Shakes")(collectively "Plaintiffs") seek to improperly expand the existing litigation by asking this Court to conditionally certify an FLSA class of Pool Service Technicians, even though Plaintiffs do not adequately identify a common policy to withhold overtime pay for alleged off the clock work.  Two Opt-In Plaintiffs Orlando Foster and Milet Charles have also sought to join this action. However, this is not an appropriate case for conditional certification.

Plaintiffs have insufficient evidence of others desiring to join this lawsuit.  While Plaintiffs support their Motion with affidavits/declarations from Plaintiffs and two Opt-In Plaintiffs, they do not reveal the basis for any personal knowledge by Plaintiffs, other than bare-bone and conclusory

statements, that other employees desire to join, and they do not specifically identify any additional employees seeking to join a collective action regarding the claims asserted in the Complaint.

Plaintiffs also do not provide any evidence to show that they and the members of the collective were the victims of the Company's common scheme to withhold overtime pay and were thus similarly situated. At most, Plaintiffs provide self-serving conclusory statements regarding their own generalized recitations of the Company's alleged failure to pay overtime without adequately describing a commonality which would bridge their experience with other pool service technicians.

While Defendants dispute Plaintiffs' allegations, even if they were true for Plaintiffs or the two Opt-In plaintiffs, any resolution of Plaintiffs' claims of unpaid wages for overtime hours worked off the clock would require individualized consideration, which would further make this case unsuitable for conditional certification.

In the event that the Court does conditionally certify the class (which is should not), Plaintiffs' proposed notice and process for notice should be revised as to be legally compliant.

## II.    FACTUAL BACKGROUND

Defendant Svensk Management, Inc. ("Defendant Svensk" and/or "the Company") does business as Advanced Pools, a pool maintenance company that provides services to residential and commercial customers in Miami-Dade, Broward, and Palm Beach County, Florida. *See* Declaration of Richard Fernbach, attached hereto as Exhibit A, ¶ 3. The Company maintains an office space in Lauderdale Lakes, Florida where pool equipment and supplies are stored. *Id.* at ¶ 4. The Company also maintains space at the office to park company vehicles. *Id.* Advanced Pools is owned by Defendant Richard Fernbach ("Defendant Fernbach"). *Id.* at ¶ 2.

**Plaintiff Sanjay Shakes.** Plaintiff Sanjay Shakes ("Plaintiff Shakes") was employed by Defendant Svensk as a pool service technician from March 19, 2018 until November 31, 2019 when he voluntarily resigned from his employment. *See* Fernbach Dec. ¶ 7. Plaintiff Shakes was paid a guaranteed minimum amount of $600 for the first three weeks of his employment, and $700 for all remaining weeks of his employment. *Id.* at ¶ 8. In addition to performing work on his daily route, Plaintiff Shakes often worked at the office, helping to fix chemical feeders. *Id.* at ¶ 9.

**Plaintiff Debron Wallen.** Plaintiff Debron Wallen ("Plaintiff Wallen") was employed by Defendant Svensk as a pool service technician from September 20, 2018 until November 15, 2019 when he voluntarily resigned from his employment. *See* Fernbach Dec. ¶ 10. Plaintiff Wallen was paid a guaranteed minimum amount of $550 for the first three weeks of his employment, $650 for the next three weeks of his employment, and $700 for all remaining weeks of his employment. *Id.* at ¶ 11. In addition to performing work on his daily route, Plaintiff Wallen often worked at the office, performing oil change on company vehicles. *Id.* at ¶ 12.

The guaranteed minimum amount was intended to compensate Plaintiff Shakes and Plaintiff Wallen (and other Pool Service Technicians) for the hours that they worked Monday through Friday, and they were paid additional compensation at an overtime rate if they worked on the weekend. *Id.* at ¶ 17. The work that Plaintiff Shakes and Plaintiff Wallen performed in addition to their daily routes took place on the weekend, and they were paid at an overtime rate for such work. *Id.* at ¶¶ 9, 12.

Plaintiff Shakes was paid for a total of 468 overtime hours for a total amount of $12,280.00 in overtime compensation and Plaintiff Wallen was paid for a total of 229 overtime hours for a total amount of $6,006.25 in overtime compensation. *Id.* at ¶¶ 23, 24. In comparison, Opt-In Plaintiff Foster was paid for a total of 20 overtime hours for the total amount of $375.00 in

overtime compensation, and Opt-In Plaintiff Millet was not paid for any overtime compensation, because he did not perform any weekend work. *Id.*

Plaintiff Shakes, Plaintiff Wallen, Opt-in Plaintiff Charles, Opt-in Plaintiff Foster, and other Pool Service Technicians, were given a route each week that identified the pools they were assigned to service. *Id.* at ¶ 18. The number of pools in a route varied from person to person. *Id.* Defendant Fernbach created the routes for the Pool Service Technicians, and he knows how long it should generally take to service the pools in each route. *Id.* at ¶ 19. As a result, it was part of his intent to distribute the routes in a manner that would not require anyone to work more than eight hours in a day. *Id.*

The amount of time worked each day varied depending on the nature of the work required at the pools on a route, which also varied from pool to pool. *Id.* at ¶ 20. The Company services residential and commercial pools, and the nature of the work at a residential pool is different than the nature of the work at a commercial pool. *Id.* For example, residential pools take less time to service than commercial pools due to their smaller size. Further, commercial pools, in comparison to typical residential pools, have chemical feeders which require different service and maintenance. Additionally, pool service technicians are responsible for monitoring and reporting the compliance of safety codes specific to commercial pools. *Id.* Some days might result in a full eight-hour work day, but many days only resulted half as much time, or even just a couple hours of work. *Id.* at ¶ 21. Even though this meant that less than 40 hours was worked by Friday of each week, the Company still payed no less than the guaranteed minimum amount. *Id.* With respect to weekends, the Company was only open until 3 pm on Saturdays and it was not open on Sundays. *Id.* at ¶ 22. Thus, if work was performed at the office on Saturday, it was supposed to be completed

by 3 pm. *Id.* The Company does not clean pools on Sunday, so there was no need or reason to perform work that day. *Id.*

Plaintiffs filed their collective action complaint on August 20, 2020 [ECF 1]. On January 27, 2021, Plaintiffs filed their Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, the subject of this present opposition. [ECF 26]. Plaintiffs proposed collective class includes all of Defendant Svensk's pool technicians as follows:

> **All service technicians, who worked for the Defendants, at any time during the last three (3) years, who were not paid all wages due for overtime worked pursuant to the Fair Labor Standards Act, in one or more workweeks, as a result of Defendants' pay practices, specifically, not keeping time records, and paying for all overtime worked during the week**.

[ECF 26], p. 1. Plaintiffs bring one cause of action against both Defendant Svensk and Defendant Fernbach premised on an allegation of unpaid overtime wages for not paying pool service technicians for hours worked over forty. [ECF 1], ¶¶ 30-42.

### III.   ARGUMENT

#### A.   Plaintiffs Fail To Meet The Legal Requirement For Conditional Certification.

District courts "have discretion, in *appropriate* cases," to implement the opt-in process "by facilitating notice to potential plaintiffs." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (emphasis added). Section 216(b)'s "similarly situated" standard is flexible and permits district courts to consider the specific circumstances of each case, the nature of the plaintiffs' claims, and evidence of actual class-wide interest to determine whether judicial notice would be "appropriate" in a particular case. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). The Eleventh Circuit suggests a two-tiered approach to certification in FLSA cases. *Id.* At this initial stage, Plaintiffs must provide evidence that (a) there are other potential plaintiffs who wish to participate and (b) Plaintiffs and the members of the proposed class are
5

similarly situated regarding the alleged violation of law underlying their claims they worked off-the-clock. *See Dybach v. Florida Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Plaintiff's burden is "**not invisible**." *Heath v. Hard Rock Café Int'l, Inc.*, 2010 WL 3941832, at *2 (M.D. Fla. Aug. 31, 2010) (emphasis added).

To meet their burden of proof, Plaintiffs must provide substantial and detailed factual allegations, supported by affidavits, which successfully engage Defendants' evidence to the contrary. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). "[T]he burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity." *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003) (denying conditional certification). Though courts need not rule on the merits when considering a motion for conditional certification, they must consider all evidence to determine whether to issue notice.[1]

### 1. Plaintiffs Have Insufficient Evidence of Others Desiring To Join The Lawsuit

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed

---

[1] *See Grayson*, 79 F.3d at 1097; *Thedford v. Drive In Evansville, Inc.*, 2014 WL 5520954, at *7 (N.D. Ala. Oct. 31, 2014). ("[A]ll the evidence will be considered, not just plaintiffs' evidence."); *Chalker v. Burlington Coat Factory of Fla., LLC*, 2013 WL 5954783, *3 (M.D. Fla. Nov. 7, 2013) ("evidence that demonstrates an array of consequential differences between the employees defeats the prospect of achieving judicial economy by resort to a collective action"); *Brooks v. BellSouth Telecomms., Inc.*, 2009 WL 10699685, at *7-10 (N.D. Ga. Feb. 10, 2009) (considering defendants' evidence in concluding lack of commonality).

by other employees, or expert evidence on the existence of other similarly situated employees. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d. 1272, 1277 (M.D. Ala. 2004).

A plaintiff's belief in the existence of other employees who desire to opt in and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify" certification of a collective action and notice to a potential class. *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing *Haynes*, 696 F.2d at 887); *Horne v. United Servs. Auto. Ass'n*, 279 F. Supp. 2d 1231, 1236-37 (M.D. Ala. 2003). Additionally, this Court has previously considered, and rejected, similar bare bone, conclusory declarations being put forward of the type offered by the Plaintiffs in this action. *See Benitez v. Balans*, 2010 WL 11602404 (S.D. Fla. December 3, 2010)(Court declined to conditionally certify class based on the filing of one or two affidavits stating that eleven other individuals "expressed an interest in joining."). *See also Rumreich v. Good Shepherd Day School of Charlotte, Inc.*, 2018 WL 4760798, * 5 (M. D. Fla. July 31, 2018)(Court denied Motion for Conditional Certification where supporting declarations contained nearly identical conclusory statements and failed to *specifically identify* any other employees who purportedly wished to join the action)(emphasis added).[2] The affidavits rejected in the *Benitez* and *Rumreich* case contain the same type of self-serving, unsupported, and flimsy allegations that Plaintiffs put forth here:

---

[2] Other jurisdictions have also held that declarations based on similar conclusory hearsay are improper *See Shala v. Dimora Ristorante, Inc.*, No. 16-3064, 2016 WL 7386954, at *3 (D.N.J. Dec. 21, 2016) (denying conditional certification because "[p]laintiff . . . submitted no evidence—other than [his] own statements in his declaration—to support the existence of a company-wide policy in violation of the FLSA"); *Asirifi v. W. Hudson Sub-Acute Care Ctr., LLC*, No. 2:11-04039 (DMC)(JBC), 2014 WL 294886, at *2 (D.N.J. Jan. 24, 2014) (finding "the plaintiff provided no evidence to show the existence of . . . other similarly situated nurses."); *Wright v. Lehigh Valley Hosp.*, No. 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010) (finding that, "despite having had ample time to recruit other registered nurses to support her claim, [plaintiff] remains unable to name a second person subjected to Defendants' FLSA violations."); *Dreyer v. Altchem Envt'l Servs., Inc.*, 2007 WL 7186177, at *4 (D.N.J. Sept. 25, 2007) (determining that plaintiffs "unsubstantiated assertions" and vague affidavits were not enough for plaintiffs to make the

- *I am sure that other Service Technicians, for SVENSK MANAGEMENT, will want to opt-into this action, upon receiving notice, because after this case was filed, two other Service Technicians approached me wanting to opt-into the action. I believe there are many more Pool Service technicians over the last three years who will opt-into this action, when notice is provided. Many Service Technicians, complained about the pay practices and not receiving what they were owed, but were frustrated that they did not know how to get what they were owed. As stated above, there are at least eleven pool service technicians at a time, for the time I was there, and they changed often, so there are, potentially, dozens of additional plaintiffs who will opt-into this action.* See Affidavit of Plaintiff Shakes, ¶ 15 [ECF 26-1].

- *I am sure that other Service Technicians, for SVENSK MANAGEMENT, will want to opt-into this action, upon receiving notice, because other Service Technicians have expressed, to me, that they wish to recover the money that they were, truly, owed, but need to know how to do so through the courts.*

  *There were eleven pool technicians at the time, during the time that I was there, but turnover was frequent, so there are, potentially, dozens of prospective plaintiffs, who were similarly situated and will, probably, wish to opt-in. This is not speculation, as two employees contacted me, and Mr. Shakes, asking how to join our action, after it was filed.* See Declaration of Plaintiff Wallen, ¶¶ 11-12 [ECF 26-2].

- *I know of at least one other person who will be interested in joining this action, if they receive notice.* See Declaration of Opt-in Plaintiff Charles, ¶ 11 [ECF 26-3].

- *I know of current employees who wish to join the action but are afraid of retaliation.* See Declaration of Opt-in Plaintiff Foster, ¶ 14 [ECF 26-4].

The above vague and generalized statements are examples of declarations/affidavits that fail to evidence that other individuals are interested in joining the lawsuit. "[A]ssertions based on 'beliefs' and 'conversations' are conclusory and . . . fall short of the substantial' and 'detailed' allegations necessary to satisfy the 'similarly situated' element." *Palacios v. Boehringer Ingelheim Pharm., Inc.*, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011). Notably, the *Benitez* Court

---

"requisite factual showing").

further opined that the best evidence of a potential class is the existence of numerous named plaintiffs who have already opted in - evidence which is conspicuously absent in this case after six months of litigation (in *Benitez*, the Court was noting the visible absence of opted-in plaintiffs even after *three* months of litigation).

The evidence set forth by the Plaintiffs does not warrant the conditional certification of a class, nor do the case they cite in the Motion. For example, Plaintiffs cite to *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270 (S.D. Fla. 2012) as alleged support that a minimal amount of interest is needed to be shown for conditional certification to be granted. However, further scrutiny of that decision reveals a completely different set of distinguishable facts. Specifically, the individuals at the focus of the *Bennett* case involved twenty-one ***already named*** Plaintiffs, joined through numerous amendments to the complaint. Plaintiffs' convenient extraction of the statement that "Courts in this district have held that the existence of just one other co-worker who desires to join…is sufficient" fails to address this statement in its full context – which is clearly different from the set of facts that exist here. Ultimately, notice to a potential class is not appropriate to determine whether there are others who desire to join the lawsuit. *Mackenzie*, 276 F. Supp. 2d at 1220 (citing *Dybach*, 942 F.2d at 1567-68). Rather, a showing that others desire to opt in is required before certification and notice will be authorized. *Id*. Although Plaintiffs' burden at the notice stage is not heavy, it is not "invisible." *Brooks v. Rainaldi Plumbing Inc.*, No. 6:06-cv-631, 2006 U.S. Dist. LEXIS 89417, 2006 WL 3544737, at *2 (M.D. Fla. Dec. 8, 2006). Thus, Plaintiffs' speculative belief that other pool service technicians will want to join the lawsuit once they hear about it does not carry his burden of showing other's desire to opt in. *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983) (commenting that counsel's unsupported

9

assertions of widespread FLSA violations and the likely existence of similarly situated employees are not enough). For these numerous reasons, the Motion should be denied.

        **2.**      **Plaintiffs Fail to Meet Their Burden to Show They are Similarly Situated to the Proposed Class of Employees They Seeks to Represent.**

A plaintiff must demonstrate there is a reasonable basis to conclude that he and other members of the proposed class have been treated in a similarly illegal manner. *Hipp*, 252 F.3d at 1219. A plaintiff can meet this burden of proof by demonstrating a common unlawful policy, plan, or scheme that creates a pattern of alleged violations. *Barron v. Henry County Sch. System*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003). Absent a policy or plan, a plaintiff "must come forward with some identifiable factual nexus which binds the named plaintiffs and potential class members together." *Harrison v. Enterprise Rent-A-Car Co.*, 1998 WL 422169, at *2 (M.D. Fla. July 1, 1998). Plaintiffs cannot establish that they are similarly situated to the putative class under either standard.

        **a.**      **Plaintiffs and the Putative Collective Are Not Subject to a Common Unlawful Policy.**

For a common policy or plan to bind a collective of purportedly similarly situated individuals, the common policy or plan must violate the FLSA. *Williams v. Accredited Home Lenders, Inc.*, 2006 WL 2085312, at *3 (N.D. Ga. July 25, 2006). No such common policy or plan exists here.

Plaintiff's theory of his case appears to revolve around their contention that Defendants' did not pay overtime compensation to Pool Service Technicians when they work more than 40 hours in a workweek. *See* ECF No. 1 at ¶ 20. However, despite Plaintiffs' self-serving and unsupported allegations, Plaintiffs and the opt-ins have failed to provide any evidence that Defendants actually have a policy that results in unpaid overtime. As a result, Plaintiffs cannot demonstrate that all Defendants Pool Service Technicians are similarly situated. In fact, the actual

evidence shows that Defendants paid a substantial amount of overtime compensation to Plaintiffs. Specifically, Plaintiff Shakes was paid 468 overtime hours during his employment (approximately 5.26 hours of overtime per week), for a total amount of $12,280.00 in overtime compensation, and Plaintiff Wallen was paid 229 overtime hours during his employment (approximately 4.24 hours of overtime per week), for a total amount of $6,006.25 in overtime compensation. *See* Ex. A at ¶ 24. In comparison, Opt-In Plaintiff Foster was paid only 20 overtime hours during his employment, for the total amount of $375.00 in overtime compensation, and Opt-In Plaintiff Millet was not paid any overtime compensation (because he did not work any overtime hours). *Id.*

Indeed, the declarations and affidavits Plaintiffs submit in support of the conditional certification motion make the same generalized, vague, and conclusory statements that they were withheld overtime pay. However, "[s]uch statements make no reference to any common policy requiring off-the-clock work and are insufficient to support a reasonable basis of a possible class of individuals who were "forced to work off-the-clock." *See Brooks v. Bellsouth Telecomms., Inc.*, 2009 U.S. Dist. LEXIS 20552, at *30-31 (N.D. Ga. Feb. 10, 2009) (even allegations that "I routinely work before and after my shift, and work during meal and rest periods . . . [including] filling customer orders and doing other tasks to meet the minimum production standards established by the company" are too general, vague, and unpersuasive to support conditional certification). These self-serving statements and Plaintiffs' cut-and-paste affidavits in their entirety, are too conclusory and vague to support a finding that the employees are similarly situated. *See Rumreich v. Good Shepherd Day Sch. of Charlotte, Inc., 2018 WL 4773107, *9 (M.D. Fla. Aug. 16, 2018)* (finding that three "cut-and-paste" declarations consisting of conclusory assertions were "not probative of the similarly situated question").

11

> **B.  The Rulings In *Wal-Mart Stores, Inc. v. Dukes* And *Comcast Corp. v. Behrend* Require Denial Of Plaintiff's Conditional Certification Motion.**

Plaintiffs argue that "very little" is required to conditionally certify a collective action. This is simply a mischaracterization of the standard, in order to get the Court to ignore the minimal evidence provided by Plaintiffs.  Rule 23 considerations regarding manageability apply with equal force to a determination of whether to conditionally certify a class under the FLSA.  *See, e.g.*, *White*, 204 F. Supp. 2d at 1315 (considering Rule 23 factors in section 216(b) conditional certification analysis).  Indeed, a circuit court of appeals compared the FLSA section 216(b) and Rule 23 analyses and concluded "there isn't a good reason to have different standards for the certification of the two different types of action." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).  Moreover, the Supreme Court decisions in *Wal-Mart Stores, Inc. v. Dukes* and *Comcast Corp. v. Behrend* require denial of Plaintiff's certification motion because the individualized inquiries inherent to their claims render them unmanageable.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (claims inappropriate for Rule 23 certification where dissimilarities within the proposed class require courts to resolve individualized inquiries); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (certification improper because plaintiffs fell "far short of establishing that damages are capable of measurement on a classwide basis" and, as a result, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class.").

Pertinent to the issue at bar, District courts throughout the country have relied on *Dukes* in deciding conditional certification motions under the FLSA.  *See, e.g.*, *Dinkel v. Medstar Health, Inc.*, 2012 U.S. Dist. LEXIS 104733, at *20 (D.D.C. July 29, 2012); *Adams v. Hy-Vee, Inc.*, 2012 U.S. Dist. LEXIS 98590, at *13-14 (W.D. Mo. May 22, 2012); *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, 2011 U.S. Dist. LEXIS 105302, at *26 (W.D.N.C. Sept. 16, 2011); *Ruiz v. Serco,*

*Inc.*, 2011 U.S. Dist. LEXIS 91215, at *18-19 (W.D. Wis. Aug. 5, 2011); *MacGregor v. Farmers Ins. Exch.*, 2011 U.S. Dist. LEXIS 80361, at *14 (D.S.C. July 22, 2011).

Defendant Fernbach is aware (via this lawsuit) that Plaintiffs claim they worked far in excess of 40 hours during each week of their employment, but he has no knowledge of any such work, other than the overtime work on weekends for which they were paid. *See* Ex. A at ¶ 25. Notably, Defendant Fernbach states that, if Plaintiffs were working more than eight hours per day on their routes, then they were doing something entirely different than what was intended for their job duties and responsibilities. *Id.* He further states that, in order to assess the truthfulness of their assertions in this regard would require an analysis of precisely what each of them was actually doing out on their routes, particularly since they were out in the field each day, without any onsite supervision or monitoring. *Id.*

In the instant action, it is clear that the answers to the relevant questions about whether employees were not paid for overtime hours will be different for the various putative class members. It is equally clear that liability determinations and any damages calculations will be individual in nature and will "overwhelm" any classwide aspects of the case. Therefore, the Supreme Court's decisions in *Dukes* and *Behrend* mandate the denial of Plaintiff's Motion.

### 1. The Proposed Collective Claims Are Unmanageable Because Individualized Inquiries Will Be Necessary To Resolve Liability.

In order to grant Plaintiffs' Motion, the Court must satisfy itself that the case is "manageable as a collective action." *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1284-85 (S.D. Fla. 2012) (denying motion to conditionally certify tip credit class under the FLSA where "several individualized issues . . . render[ed] the group unmanageable as a collective class"). Manageability concerns are a critical component of multi-party class litigation, because the determination of how a case will be tried is significant in the certification context. *Id.* at 1284-85;

*see also Shim v. Echosphere, L.L.C.*, 2010 U.S. Dist. LEXIS 135984, at *5-6 (S.D. Fla. Dec. 20, 2010) (denying conditional certification to a putative class of cable technicians given "significant individual considerations" which would "likely multiply if the Court conditionally certified a nationwide class" and would "not promote judicial and litigant economy, which are, of course, the *raison d'etre* of the § 216(b) collective action."); *Tyler*, 2005 U.S. Dist. LEXIS 31682, *15 (denying conditional certification in part because resolution of the case would necessarily depend on an "individual fact-specific analysis"); *Marsh v. Butler County Sch. Sys.,* 242 F. Supp. 2d 1086, 1096 (M.D. Ala. 2003) (denying collective action certification where court was "not satisfied that conditionally certifying a collective action will achieve an economy of scale envisioned by the FLSA collective action procedure").  Here, individual consideration requiring individual inquiry will preclude any judicial and litigant economy and requires a denial of Plaintiffs' Motion.

As highlighted above, the two named Plaintiffs and two Opt-in Plaintiffs were paid at different rates over the course of their employment. *See* Fernbach Decl. ¶¶ 8, 11, 14, 16.  Plaintiff Shakes and Plaintiff Wallen also performed a significant amount of overtime work at the office, which was distinguishable from the other employees. *Id.* at ¶¶ 9, 12.  As such, an inquiry into Plaintiffs' own damages will require individual inquiry and will have no bearing on the damages of other individuals.  The collective action mechanism should be employed only in cases involving "common issues of law and fact arising from the same alleged activity, such that resolution of common issues in one proceeding would promote efficiency and judicial economy." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

In order to resolve these issues, the Court would be required to determine whether a class member worked off the clock, when, and for how long, and then compare the data with the class member's payroll records to determine, whether, any of these employees were not paid overtime.

14

The Court can glean none of this information from generalized evidence or representative proof. As a result, conditionally certifying a collective action will not achieve an economy of scale envisioned by the FLSA collective action procedure and should be denied. Similar obstacle to conditional certification results from the damages issue in this case.

        **2.    The Proposed Collective Claims Are Unmanageable Because Individualized Inquiries Will Be Necessary To Resolve Damages.**

The damages issue in this case will similarly preclude conditional certification. To obtain recovery, each member of the putative collective must first prove that he or she worked for over 40 hours each week and only thereby, might have not received pay for off the clock overtime requested in the lawsuit. This will require an individualized assessment of as to each individuals claims as to the amount of time they spent engaged with work within a forty hour work week, when they were away from work, and how much overtime work they claim they performed. This inquiry will render collective treatment both inappropriate and inefficient. *West v. Verizon*, 2009 U.S. Dist. LEXIS 82665, at *12 (M.D. Fla. Jul. 20, 2009) (denying class certification because, among other reasons, compensability of waiting time under the FLSA was an individual question that precluded a finding that putative class members are similarly situated); *Lewis–Gursky v. Citigroup, Inc.*, 2017 WL 892604 (M.D. Fla. Mar. 6, 2017) (denying motion for conditional class certification because "material differences between the members of the proposed collective would lead to unmanageable individualized inquiries regarding joint employment if a collective were to be certified").

        **3.    Affirmative Defenses Will Require Individual Inquiry**

Economy of scale will further be precluded because affirmative defenses will have to be individually adjudicated and this further warrants a denial of the Conditional Certification Motion. Under the FLSA, the Court must resolve defenses "available to defendants that appear to be

individual to each plaintiff." *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007). For example, the Court will be required to resolve Defendants' affirmative defenses to liability, including that they paid each and every pool technician proper overtime compensation. *See, e.g.*, *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) ("Without evidence that Baptist prevented White from utilizing the system to report entirely or partially missed meal breaks, White cannot recover damages from Baptist under the FLSA."); *Brown v. Scriptpro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) ("[W]here the employee fails to notify the employer [of time worked] through the established overtime record-keeping system, the failure to pay overtime is not an FLSA violation."). Thus, inherently, determining the damages, if any, will require an individual inquiry into each putative class member's hours worked and earnings. These defenses, along with the other inevitable individual inquiries, present additional reasons why conditional certification is improper.

### C. A Failure To Conditionally Certify Will Not Result In Undue Prejudice To Opt-In Plaintiffs

Plaintiffs' claim that prejudice may result from denying conditional certification is entirely misguided and simply not accurate. Generally, when conditional certification of a collective action is denied, existing opt-in plaintiffs are dismissed from the lawsuit without prejudice and the matter proceeds on the named plaintiff's individual claims. *See Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008) (explaining when district court denied certification of an FLSA collective action, it allowed the named plaintiffs' claims to go forward and dismissed the opt-in plaintiffs without prejudice); *Hipp*, 252 F.3d at 1218 (suggesting opt in plaintiffs should be dismissed without prejudice in an FLSA collective action that is decertified). Any current and former Pool Service Technicians remain free to pursue an FLSA claim against Defendants, yesterday, today, and tomorrow, regardless of whether Plaintiff's Motion is granted or denied.

D.     **The Court Should Reject Plaintiffs' Proposed Notice**

In the event the Court grant Plaintiffs' Motion (and it should not), the Court has broad discretion to formulate the opt-in notice in order to ensure that the litigation is conducted in an "orderly and sensible" manner and to ensure that putative class members do not receive "misleading communications." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 172 (1989) ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner."). Thus, to the extent that the Court grants Plaintiffs' Motion and conditionally certifies a class, Defendants object to Plaintiffs' Proposed Notice and (lack of) Consent form for the following reasons.

**First**, an opt-in notice must be neutral. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 174 (1989) ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner.") (court must "take care to avoid even the appearance of judicial endorsement of the merits of the action" and "must be scrupulous to respect judicial neutrality"). Plaintiffs' Proposed Notice is not neutral. It is overly solicitous, one-sided by inferring that unpaid overtime wages were unpaid (*see* all caps, bolded paragraphs which impose the phrases "**WERE NOT PAID FULL OVERTIME DUE**" and "**NOT PAID FULL AND PROPER OVERTIME COMPENSATION DUE,**" and contains the case caption (which could mislead potential plaintiffs into believing it was issued by the court). [ECF 26-5].

17

Additionally, the Proposed Notice fails to provide Defendants' description of the lawsuit or its position regarding Plaintiffs' allegations. Further, the Proposed Notice fails to list the names and contact information for Defendants' counsel. *See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (requiring inclusion of contact information for defendants' counsel); *Guzman v. VLM, Inc.*, 2007 WL 2994278, at *8 (S.D.N.Y. Oct. 5, 2009) ("it would be appropriate to notify potential class members that they can seek further information about the case, and to include the contact information of defense attorneys").

**Second,** Plaintiffs have not presented facts showing that notice via electronic mail is necessary. *See Lewis v. The Huntington National Bank*, 2011 U.S. Dist. LEXIS 65068, (D. Ohio June 20, 2011) (denying plaintiff's request to post notice). Indeed, first-class mailing of the proposed notice is the preferred method and alternative forms of notification (such as posting of the notice or distribution via email) should not be used unless plaintiff presents facts showing that other methods are necessary. No such showing was made; thus, distribution via electronic email is unnecessary and should be denied. *See In re Wells Fargo Wage and Hour Employment Practices Litig. (No. III)*, 2013 U.S. Dist. LEXIS 70040, at *6-8 (S.D. Tex. May 17, 2013) (denying request that notice be e-mailed and posted on the employer's premises and on its network); *Hintergerger v. Catholic Health System*, 2009 U.S. Dist. LEXIS 97944, at *40-41 (W.D.N.Y. Oct. 21, 2009) (denying request for notice via e-mail, posting at employer's location, and in newsletter publications).

**Third**, the Proposed Notice cites an incorrect statute of limitations. The FLSA statute of limitations does not guarantee a three (3) year notice period in all cases. The FLSA provides for a statute of limitations of two (2) years for all violations except for those deemed *willful*. It is Plaintiffs' burden to demonstrate that any alleged violation of the FLSA was "willful." *Turner* v.

Aldo US, Inc. 2009 U.S. Dist. LEXIS 69913 at *11-12 (M.D. Fla. Aug. 10, 2009). Here, Plaintiffs state that willfulness exists because Defendants were sued in two prior FLSA lawsuits. However, Plaintiffs provide no information about those matters, nor do they even allege that there was ever any finding of prior FLSA violations. *See Ojeda-Sanchez v. Bland Farms, LLC*, 499 Fed. Appx. 897, 903 (11th Cir. 2012)(In declining to find willfulness for purposes of extending the FLSA statute of limitations to three years, the Court noted that despite six prior FLSA lawsuits against the employer, there had never been a single finding of an FLSA violation as the cases had settled before any trial). Plaintiffs leave out actual information about these two prior FLSA lawsuits, because it is not helpful towards their assertion. Both prior lawsuits were filed in 2008. *See* Fernbach Decl. at ¶ 27. One case was a misclassification case filed by a former Renovations Supervisor, and the other case was an overtime case that ultimately settled, but it was resolved with a minimal settlement payment to the plaintiff ($2,000) after only a few weeks. *Id.* at ¶¶ 28, 29. Neither case has any relevance to an analysis of willfulness, given the clear differences and length of time that has passed. Because Plaintiffs have not (and cannot) establish willfulness, the Court should not consider any proposed class which goes beyond two years.

**Fourth**, the Proposed Notice fails to provide any opt-in deadline and fails to provide a sample Consent Form. Should the Court decide to move forward with conditional certification, the Court should limit the opt-in period to 30 days. This period will provide the putative class, with sufficient time to file their consent forms, while providing Defendants with notice of the scope of the action within a reasonable period of time. Courts in this District have routinely ruled that 45-day (and shorter) notice periods are appropriate for FLSA collective actions. *See, e.g.*, *Bell v. MYNT Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004). Moreover, the proposed notice provides for putative class members to submit the consent forms via e-mail. Such instructions should be

removed in light of the possibility that promoting such use of electronic mail could result in putative class members forwarding the notice and/or consent forms to individuals not covered by the proposed class.

### IV. CONCLUSION

Plaintiffs have not carried their burden of showing that conditional certification is proper. Specifically, the evidence makes clear that Plaintiffs and the overbroad class of persons their counsel seeks to represent are not at all similarly situated and that permitting this matter to proceed collectively, even on a conditional basis, will result in an unmanageable matter overcome with individual questions without common answers. For these reasons, Defendants request that the Court deny Plaintiffs' Motion.

DATED: this 24th day of February 2021

Respectfully submitted,

LITTLER MENDELSON, P.C.
Wells Fargo Center
333 S.E. 2nd Avenue, Suite 2700
Miami, Florida 33131
Tel: (305) 400-7500
Fax: (305) 489-6375

/s/ *Stella Chu*
Aaron Reed
Florida Bar No. 557153
E-mail: areed@littler.com
Stella Chu
Florida Bar No. 60519
E-mail: sschu@littler.com

*COUNSEL FOR DEFENDANTS*

4828-8659-9133.1 109338.1001