# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 20-cv-61690-SINGHAL

DEBRON WALLEN,
SANJAY SHAKES, Individually and
On Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

SVENSK MANAGEMENT, INC. &
RICHARD FERNBACH,

    Defendants.
_____/

## DECLARATION OF RICHARD FERNBACH

I, Richard Fernbach, hereby declare as follows:

1. I am an adult over eighteen (18) years of age and reside in the State of Florida. I have personal knowledge of and am competent to testify regarding the matters set forth in this Declaration. I give this Declaration voluntarily and of my own free will. Before signing this Declaration, I reviewed it completely for accuracy, and made any changes that were necessary to make it accurate. I understand that this Declaration may be used for any purpose permitted by law.

2. I am the owner of Svensk Management, Inc. ("Svensk"), which does business as Advanced Pools. I have been the owner of this company since 1986.

3. Svensk is a pool maintenance company that provides services to residential and commercial customers in Miami-Dade, Broward County, and Palm Beach County Florida. The Company currently has 15 employees, 12 of which are Pool Service Technicians.

1

4. Svensk operates an office space in Lauderdale Lakes, Florida where it, among other things, stores pool equipment and supplies, and maintains space to park company vehicles.

5. As the Owner, I am responsible for, in addition to other tasks, payroll and setting the routes and schedules of Svensk's pool service technicians.

6. Svensk's practice is to pay its employees all compensation to which they are entitled, in accordance with applicable state and federal laws.

7. Plaintiff Sanjay Shakes ("Plaintiff Shakes") was employed by Svensk as a Pool Service Technician from March 19, 2018 until November 31, 2019, when he voluntarily resigned from his employment.

8. Plaintiff Shakes was paid a guaranteed minimum amount of $600 for the first three weeks of his employment, and $700 for all remaining weeks of his employment.

9. In addition to performing work on his daily route, Plaintiff Shakes often worked at the office, helping to fix chemical feeders. This additional work took place on the weekend, and he was paid at an overtime rate for such work.

10. Plaintiff Debron Wallen ("Plaintiff Wallen") was employed by Svensk as a Pool Service Technician from September 20, 2018 until November 15, 2019, when he voluntarily resigned from his employment.

11. Plaintiff Wallen was paid a guaranteed minimum amount of $550 for the first three weeks of his employment, $650 for the next three weeks of his employment, and $700 for all remaining weeks of his employment.

12. In addition to performing work on his daily route, Plaintiff Wallen often worked at the office, performing oil change on company vehicles. This additional work took

place on the weekend, and he was paid at an overtime rate for such work.

13. Opt-In Plaintiff Millet Charles ("Opt-In Plaintiff Charles") was employed by Svensk as a Pool Service Technician from September 16, 2019 until January 25, 2020 when he failed to show to work.

14. Opt-In Plaintiff Charles was paid a guaranteed amount of $650 per week for his entire employment.

15. Opt-In Plaintiff Orlando Foster ("Opt-In Plaintiff Foster") was employed periodically by Svensk as a Pool Service Technician from July 3, 2019 until April 21, 2020 when he stopped showing up to work.

16. Opt-In Plaintiff Foster was paid $800 for the first week of his employment, $550 for his second week of employment, $650 per week for the remaining term of his employment, with the exception of the last eight weeks of his employment where he was paid $700 per week and $420 (pro-rated) for his last paycheck.

17. The guaranteed minimum amount was intended to compensate them for the hours that they worked Monday through Friday, and they were paid additional compensation at an overtime rate if they worked on the weekend.

18. Plaintiff Shakes, Plaintiff Wallen, Opt-in Plaintiff Charles, Opt-in Plaintiff Foster, and other Pool Service Technicians, were given a route each week that identified the pools they were assigned to service. The number of pools in a route varied from person to person.

19. I created the routes for the Pool Service Technicians, and I know how long it should generally take to service the pools in each route. As a result, it was part of my intent

to distribute the routes in a manner that would not require anyone to work more than eight hours in a day.

20. The amount of time worked each day varied depending on the nature of the work required at the pools on a route, which also varied from pool to pool. The Company services residential and commercial pools, and the nature of the work at a residential pool is different than the nature of the work at a commercial pool. For example, residential pools take less time to service than commercial pools due to their smaller size. Further, commercial pools, in comparison to typical residential pools, have chemical feeders which require different service and maintenance. Additionally, pool service technicians are responsible for monitoring and reporting the compliance of safety codes specific to commercial pools.

21. Some days might result in a full eight-hour work day, but many days only resulted half as much time, or even just a couple hours of work. Even though this meant that less than 40 hours was worked by Friday of each week, the Company still payed no less than the guaranteed minimum amount.

22. With respect to weekends, the Company was only open until 3 pm on Saturdays and it was not open on Sundays. Thus, if work was performed at the office on Saturday, it was supposed to be completed by 3 pm. The Company does not clean pools on Sunday, so there was no need or reason to perform work that day.

23. Plaintiff Shakes, Plaintiff Wallen, and Opt-In Plaintiff Foster, were paid at one-and-one half their regular rate of pay when they worked more than 40 hours in a workweek, which only occurred if they performed work on the weekend. Opt-In Plaintiff Charles did not perform any work on weekends.

24. Plaintiff Shakes was paid for a total of 468 overtime hours for a total amount of $12,280.00 in overtime compensation, Plaintiff Wallen was paid for a total of 229 overtime hours for a total amount of $6,006.25 in overtime compensation, and Opt-In Plaintiff Foster was paid for a total of 20 overtime hours for the total amount of $375.00 in overtime compensation.

25. I am aware that Plaintiff Shakes, Plaintiff Wallen, Opt-in Plaintiff Charles, and Opt-in Plaintiff Foster each claim that they worked far in excess of 40 hours during each week of their employment. I have no knowledge of any such work, other than the overtime work on weekends for which they were paid. If any of them was working more than eight hours per day on their routes, then they were doing something entirely different than what was intended for their job duties and responsibilities. In order to assess the truthfulness of their assertions in this regard would require an analysis of precisely what each of them was actually doing out on their routes, particularly since they were out in the field each day, without any onsite supervision or monitoring.

26. At the time of hire, Plaintiff Shakes, Plaintiff Wallen, Opt-In Plaintiff Charles and Opt-In Plaintiff Foster were all notified of this payment method and at no time did any of these employees tell me they believed they were working any hours without proper and compete compensation (for regular hours or for overtime hours), nor did any of them otherwise complain regarding the Company's payment policies and practices. To the contrary, I am confident that the guaranteed minimum amount of pay worked out in their favor, since they got paid that amount in numerous workweeks when they performed far less than 40 hours of work by the time Friday was over.

27. My Company has only been involved in an FLSA lawsuit on two prior

occasions, both of which were filed in 2008 and neither of which was similar to this case in any manner.

28. In December 2008, former Renovations Supervisor Joseph Engelhardt filed an action for unpaid overtime under the FLSA. Mr. Engelhardt's position was classified by the Company as exempt from the overtime requirements of the FLSA. In the lawsuit, Mr. Engelhadt argued that he was improperly classified as an exempt employee, and therefore he claimed that he should have been paid overtime compensation. The entire case focused on that exemption dispute. Although we denied the allegations, the case was ultimately resolved via settlement.

29. In August 2008, former pool service technician Jeremy Wise filed an action for unpaid overtime under the FLSA. Mr. Wise was an hourly employee, and he claimed that the Company owed him unpaid overtime. However, Mr. Wise was only employed with my Company for four months, and within a few weeks of when I learned about the lawsuit, his counsel offered to resolve the case and we reached a quick settlement for a small amount. At the time, I do not recall that I even knew much of anything about why he claimed to be owed unpaid overtime. Even though I did not believe that I owed him any unpaid compensation, it made sense to resolve it, given the amount. Mr. Wise received payment of $2,000.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

DATED: Feb 23, 2021

_____
Richard Fernbach